We'll call the first case of Freeman v. Pittsburgh Glass Works et al., Mr. Fox. Your Honors, may it please the Court, I'm Bruce Fox of the law firm of Oprah Mayer Redmond Maxwell & Hipple, representing the Appleland James Freeman. I've requested 10 minutes of oral argument, with five reserved for rebuttal, Your Honors. On August 22, 2011, the arbitrator made the partial disclosure in this case that is critical to the resolution of this appeal. She told us, you all know that it's a small legal community here, and that she knew some people from PPG. Let me stop you there, Mr. Fox, if I may. I apologize, but I'd like to have a little better understanding of the procedural background to this case. And I do have a little experience in the Western District of Pennsylvania, but I'm curious as to how this came to be arbitrated and what arbitration program this was part of. It started as an action before Judge Schwab, and it then was referred to arbitration. Was this the court-annexed voluntary arbitration program of the Western District? Was it 3A arbitration of some kind? Your Honor, this was done fairly far into the case. We went through the routine initial mediation in the case, the ADR procedure, under the local rules. Then the case proceeded through discovery. The parties engaged in extensive discovery in the case. And at the point at which the case was established for trial, and we had a pretrial conference or a status conference shortly before the scheduled trial, at the suggestion of the court and with the consent of the parties, it was agreed that the case would be arbitrated. And at that point, Your Honor, three suggestions were made by the court for potential arbitrators. And both sides agreed to the three names? Both sides agreed to the three names, subject to further review and analysis. The first person on the list was the arbitrator who was actually chosen, Judge Maureen Lawley-Green. And the closeout order was issued when? I'm sorry? The closeout order was issued when? After the case was referred to arbitration. But before the award? But before the award, I believe, Your Honor. On August 20th, the case was agreed that the matter would be arbitrated formally on October 31st, 2011. That's when the parties signed the actual arbitration agreement. And that agreement contained a critical provision that bound both parties, as well as the arbitrator who was a signatory to the agreement, to the governing rules for employment disputes, and which bound the arbitrator to adhere to those specific disclosure rules. That occurred on October 31st. There's nothing in the record to suggest that the district court dismissed this case with that closeout order, is there? Not at all, Your Honor. It was merely an administrative closure. We've cited ample authority in our papers. And these are commonly used in the Western District and elsewhere. Common practice. It doesn't mean that the judge somehow divests himself of jurisdiction. The docket control method. Unless the order closing the case is the functional equivalent of a dismissal, even though the word dismissal was never used. Exactly, Your Honor. There's no mention anywhere in the judge's order administratively closing the case that he was dismissing any of the claims or intended to. It was merely a procedural mechanism. Well, and indeed he kept it open, for lack of a better word, in terms of compensation for the arbitrator at the conclusion of the proceeding, did he not? Yes, yes he did, Your Honor. And Judge Schwab certainly believed when he wrote his opinion deciding the motion to vacate that he retained continuing jurisdiction to resolve all issues relating to the propriety of the arbitrator's decision. Well, he had a line in a footnote. He didn't cite Greentree or any of that. He did not, Your Honor. Is it his problem? Your friends do that. I'm sorry, Your Honor? Your friends think it is a problem.  I don't think it is a problem at all. It merely addresses the issue of whether or not there was a final decision. Of course, there couldn't have been an appeal from the order sending it to arbitration because they agreed on it. It was not a contested proceeding. That's correct, Your Honor. It was a settled issue. That's correct. And if the role suggested by the apologies were adopted, all cases involving administrative closure would have to be treated as final dispositions of those matters. And I don't think that Greentree or any of the authority that they attempt to rely upon would support that proposition. So getting back to the fundamental issues, Mr. Freeman relied upon the partial disclosure that was made to him, believing that a former appellate court judge, superior court judge in the state of Pennsylvania, as well as a candidate for the Pennsylvania Supreme Court, would have disclosed any further material facts regarding her relationship with Lawrence. But herein lies the problem. Apparently that's all good and well now, but once you lost, it all of a sudden became important. Isn't there a really good waiver argument here? All the information was out there and could have been found prior to, you know, I mean, you could have done a little research and didn't. Didn't she put you on notice? She did not put us on notice, Your Honor. In fact, she, to the contrary, she assured us by her partial representation, led us to believe that she had made an adequate disclosure by saying, you all know it's a small legal community in Pittsburgh, and that she knew some people at PPG. Certainly we were entitled to believe that if there was more to it than that, she would have told us at that point in time. There is no evidence that she knew about the campaign contributions by members of PGW. There is no evidence developed in the record confirming that she directly, that she had actual knowledge of that. So you're really suggesting that she not only had a duty to disclose, there was no evidence she knew, but she had a duty to investigate, to see if there was something that she should disclose. And that's what the rules governing arbitration proceedings in employment disputes provide, Your Honor, precisely that. Would Justice White, which became the majority in Commonwealth closing, have gone that far? Because he said in his concurrence that the arbitrator cannot be expected to provide the parties with his complete and unexpurgated business biography. That's what you're calling for here, really, aren't you? I don't think so, Your Honor. Given the fact that the scope of the representation made by the arbitrator specifically dealt with her contacts and relationships with PPG, and the fact that the Code of Ethics, Canon 2 of the Code of Ethics, clearly and unambiguously requires the arbitrator to disclose her known direct or indirect financial or personal interests, and further requires her to investigate whether or not there are any conflicts and disclose those to the parties. And the law in the Commonwealth also requires a candidate to file a financial disclosure form after the campaign. Certainly you would, if not be on constructive notice of that, you'd have actual knowledge of it, having your firm having made financial contributions to that campaign yourselves. So having been placed on notice of the fact she received some, and being aware under the law that her campaign has to file a report indicating campaign contributions, why were you not under an obligation to look further and examine that report? Because the line of authority emanating from Commonwealth codings does not place the burden upon counsel to do sleuthing and investigation of the arbitrator, particularly when the arbitrator has made representations specifically dealing with the relationship at issue. Very general representations, though. It certainly wasn't specific. I know people. I know people at PPG, and it's a small legal community here. She was suggesting merely acquaintance, Your Honor. She wasn't suggesting that she actually taught employment law with one of the lawyers in the employment group at PPG. She didn't make any intimation that she received contributions from not only the corporation, but that employment lawyer, general counsel, two senior executives at PPG. That's certainly something we would have expected. She would have disclosed and reasonably expected at that time. Given the scope of what she told us. And the obligation is upon her. It's not upon us to go out and investigate. We only found out about after the arbitration proceeding. Do you think Section 10 of the FAA would look at this twice in terms of supporting a motion to vacate an arbitration? You can talk about rules and ethics all you want, the AAA rules and the judicial ethics, and you really haven't given the integrity of this arbitrator. But I just wonder if this is the kind of, is this the kind of allegation that would support under the Federal Arbitration Act the vacation of an arbitration? I believe it would, Your Honor, because the Federal Arbitration Act is premised upon the notion that there should be complete and full disclosure of conflict. This works two ways. I mean, you're charging her essentially with fraudulent concealment here of something you've not shown she even knew about. You're essentially saying she should have found out and then told you. But meanwhile, when did you learn of your own contributions to her? Because they weren't disclosed even when you moved to vacate the arbitration award. Your Honor, respectfully, the duty of disclosure is not upon counsel to the parties. The duty of disclosure is placed upon the arbitrator to the proceedings. Well, having, as Judge Barry has just mentioned, you're having included a fraud claim here, just how material should we consider this lack of disclosure on the arbitrator's part to be when you didn't regard it as material enough to disclose your own campaign contributions? No, we were not, in fact, aware, and there's nothing in the record suggesting that counsel involved in this case was aware of the campaign contributions that were made to the arbitrator. But as we've known in our briefs, the law firm – When did you learn of your own contributions? I did not learn of it until the briefs were filed. Who's in the editorial? You're a member of your firm and you didn't know? I am, but I'm not involved in making decisions with regard to judicial contributions. But the arbitrator should have known. You're not involved, but the arbitrator who then was a member of the Superior Court of Pennsylvania and, as any candidate for state judicial office is required to do, had to place legal distance between herself and fundraising, to which she's not permitted to be involved directly in any of it, solicit or to receive those funds. Somehow she should have known. It's our belief that she should have known, Your Honor, given the nature of the contributions that were made to her. They were diverse. They were from very high persons within the organization. They were from the Employment Council as well as General Counsel. And we've also argued that she did not disclose her actual relationship with Employment Counsel. We were totally unaware of that, and that was something that certainly should have been mentioned at the outset. Had I known that she'd received these campaign contributions and that she had an ongoing relationship with in-house Employment Counsel, I would never have consented to the appointment of her as an arbitrator. But you waited until you got an adverse arbitration decision before you found all of these things out. That's correct, and we relied upon the representations that she made to us, as well as the rules requiring disclosure. In page 24 of your brief, that if you had won before the arbitrator, that Appelese might well have had an argument for vacating the award based on her failure to disclose your contributions. Are you suggesting that the failure to disclose is fraudulent depending on who wins? The party may have standing to object to the award if the adverse party is the party that's receiving the contributions that have not been disclosed, particularly in a case such as this where there is a partial and incomplete representation as made by the arbitrator. And that was in response to the argument, Your Honor, that somehow the contributions that my law firm made to our campaign, as well as the campaigns of all the other judicial candidates, somehow canceled out the specific targeted campaign contributions that were made by PPG and canceled out her failure to disclose her relationship with in-house employment. Whatever the standard is, whether it's partiality, evident partiality, appearance of partiality, it means an arbitrator's tendency to favor one of the parties. Where, just as a matter of common sense, where both parties have given to the arbitrator, how can there be an appearance of bias toward the one side? Well, because that wasn't, in fact, the case true, Your Honor, that both parties contributed. It's quite a different thing for a law firm to make contributions. Well, your contributions were four times what theirs were. Again, Your Honor, Mr. Freeman made no contributions of any kind. Are your contributions imputed to him? I don't see how they could be, Your Honor. Something like this? I don't see how they could be, particularly in a case where we made reciprocal contributions to all the other competing candidates, as law firms in Pennsylvania routinely do, of our size. It's not an unusual thing. It doesn't suggest partiality, in my view. Again, the issue is whether or not the arbitrator had the duty to disclose. There's no case law requiring counsel to an arbitration to disclose relationships with the arbitrator. And the cases that we're relying upon, dating back to Commonwealth codings, uniformly stand for the proposition that the appearance of impropriety provides a basis for vacatur. There's certainly ample evidence to show that the appearance of impropriety here was profound, again, given the partial representation. Is that the standard, simply appearance of impropriety? That is the standard, Your Honor. I would direct, for a complete treatment of the line of authority following Commonwealth codings, I would direct the court to the Crow construction case, which lays out very comprehensively the origins of the appearance of bias standard, which Judge Newcomer noted that the appearance of bias standard should be the proper standard in a case where there was a nondisclosure. What about our Kaplan case? Yes, what about the footnote in Kaplan, which really seems to suggest a significantly different standard than appearance of impropriety? The Crow construction case, Your Honor, fully deals with Kaplan. Kaplan, in a footnote, borrowed from Sixth Circuit language to indicate that evident partiality is only present under a reasonable person standard to conclude that the arbitrator was partial. Kaplan wasn't a failure to disclose. Kaplan was not a failure to disclose case. It was not a failure to disclose case, and that's what the Crow construction case. Kaplan was slightly a failure to disclose case. That's correct. And the Crow construction case also makes it very clear that it analyzes the Commonwealth Codings decision, and I think a very thoughtful analysis concludes that it was not a plurality decision, that it is controlling in the extent to which Kaplan was in contravention of the basic holding of Commonwealth Codings, which is that the appearance of impropriety standard applies. The Third Circuit was in error. Judge Schwab has already dealt with that, too. He said even if it is appearance of impropriety, there isn't any. Well, and we're entitled to de novo review to look at that issue, Your Honor. He had no analysis or support. He just summarily, in a very conclusory fashion, said that he didn't think there was any appearance of bias. There's no analysis of the facts supporting that determination. Maybe he doesn't need too much analysis. Maybe it was almost a self-evident proposition. Well, again, Your Honor, this is not a case that I would have ever submitted to an arbitrator that received campaign contributions to the level that this arbitrator did from the folks at PPG, as well as, you know, obviously having a social and professional relationship with their in-house employment counsel. That certainly would have... I hadn't understood social relationship. The only allegation is they co-taught a course in employment law. Where is it alleged that there was a social relationship? I'm assuming that you're right. That's correct. Doesn't appear anywhere in the record. Nowhere in the record. And I do reject that. It was a professional relationship. One might... We'll have you back on rebuttal, Mr. Fox. We'll be on time here. Thank you, Your Honor. Here for Mr. Meyer. Good morning, Your Honor. Jeff Meyer, representing PGW Autoglass LLC and Pittsburgh Glassworks LLC. May I proceed? Yes. But if you would proceed by first addressing for me, please, why this isn't just a standard administrative closing that Judge Schwab issued. Certainly, Your Honor. I believe the answers to virtually all of your questions come from the order that was entered on August 4, 2011. That order disclosed of all merit issues in the case for all time. How is what he did any different than what was done in Penn West? It was very different. Because in Penn West, there was confusion regarding whether or not there was an actual settlement. And there was an administrative closing, and the case went back and forth on whether or not there was an assumption of a settlement. In this case, on August 4, 2011, the court signed an order by agreement that sent the case to one of three proposed arbitrators. Therefore, it's not the marking of the closing that matters. Regardless, for example, what this court would do or hypothetically another court would have done, a federal court will never address the merits of the age discrimination case. But you don't see dismissal anywhere in that order, right? Well, Your Honor, that's the issue posed by Greentree, and it's fairly focused. The question from Greentree, which is for Your Honors, is whether an order that, by its terms, resolves all the merit issues, namely whether or not there's age discrimination for a federal court, but doesn't include other language, such as it's dismissed with prejudice, is, in fact, a final order. It's our position that Greentree resolved that by saying it's appealable. So, for example, if I can provide an analytical thought process, let's say Judge Schwab had entered the same order over some form of objection, whether it was procedural or not, then Mr. Freeman would have had 30 days to appeal. If he didn't appeal, it would be final. Now, in this case, no one was going to appeal because it was agreed, but it should not matter. A federal court will never, again, touch the merits of this case. And if we look at the Federal Arbitration Act statutory scheme, as the Greentree court said, that there can be a, quote, separate proceeding, and that's the Supreme Court's language, to confirm, to vacate, to modify. And so there was nothing stopping the prevailing party in this case if Mr. Freeman or PGW so chose to file a motion to confirm in another court, if any was proper. They needed a separate basis of jurisdiction. That's right. So I certainly understand the issues posed by the court. I think it's laid out by our briefs. Is there something missing from Judge Schwab's order that gives him continuing jurisdiction over what the Supreme Court has called a separate proceeding? Our position is that he didn't stay the case. The order resolves all the merit issues. The standard administrative closeout order used in the Western District,  I've never seen one of those orders do it. My standard order never did it. I never saw any of my colleagues do it. And that was just implicit to the docket control that went with a closeout order. Certainly. Your Honor, again, it's very straightforward. The case that was filed was an age discrimination case under federal law. The Supreme Court has said the other case, this case, is a separate proceeding, and whether that order can be read as creating residual jurisdiction, we would contend, would be a reading that's not supportive of any other case. The Switzer case, which we cited, reached that conclusion. Isn't it fair to say that Judge Schwab intended to maintain some sort of supervisory function over this case that's inconsistent with a full-fledged dismissal? Your Honor, I would suggest that if you read his order, his order suggests some supervisory function for matters stated in the order itself. That's why I believe the order answers many of your questions. For example, there was an issue of compensation. So a court always has jurisdiction to enforce its own orders. His order said if you have trouble figuring out compensation, come back to me. That's not the same thing as saying if you have a separate proceeding, and he could have said that. He could have written, or in fact, more importantly in this case, Mr. Freeman could have bargained for language that said, we want you to stay on top of the whole case. But instead, that's not what the order says. And the remedy, it's not absurd, the remedy under the federal statutory scheme is just file in state court or file a complaint with independent jurisdiction. But it is a focused issue. I understand the issue. We believe Green Tree cannot be reconciled with Judge Schwab's assertion of jurisdiction because if it is indeed a final order and the separate motion is a separate proceeding, then by definition you need independent jurisdiction, and there is none. If it's construed as a stay or something similar, that is, you can imply jurisdiction, then there would be jurisdiction, and we contend that it's improper to imply continuing jurisdiction in those circumstances. Well, if indeed we can, we must have jurisdiction. Yes. If indeed we find, though it may be close that we have jurisdiction, you won't exactly fall down, having heard the questions that we asked Mr. Fox, you should be rather pleased with the way so far until we hear his rebuttal, this case appears to be going. We are certain we've laid out our position, but jurisdiction is an obligation of attorneys and the court. Sure it is, and we understand that. There's threshold number one, major threshold, but then you've also argued that the evident partiality claim was waived. Yes, Your Honor. By the other side, right? Should we really invoke waiver here, which is within our discretion to determine, where it would seem indisputable that those facts that Judge Lally Green did reveal were not complete? Your Honor, I would disagree with that strongly for several reasons. First of all, and that's why I go back to the order, in all the cases that are cited, every single one, there's an arbitrator selection process, and even in the case that Mr. Fox is so fond of, where there's a duty to investigate, the parties are going through the process of selecting arbitrators. In this case, in the judge's chambers, after discovery is complete, an order is entered that says, for whatever reasons the parties had, and they're free to do that under the FAA, they said, these three are fine, and we all did that based on whatever our internal calculus was. And the remedy that was selected was, if you don't like number one, you go to number two or number three. And if you read the whole order, there was a purpose to that. Not only was the hearing supposed to be held rapidly, and it was, but if my client, PGW, which, by the way, is not PPG, lost, we had to pay money by December 28th. Your client had once been a fully-owned subsidiary of PPG? No, Your Honor, the record isn't complete on that. PGW is a newly-formed LLC that bought certain automotive assets from PPG and had new management. Did PPG have a controlling interest in your client? It did not. It had a 40% interest, and that's not in the record. That's not considered controlling, at least for SEC purposes? PPG has a significant interest in PGW, but PGW, the people at the hearing, didn't make any contributions. Let me try to draw a distinction here and see if it holds up, if you think it's a distinction. We've talked at some length in questions and answers about the campaign contributions and the extent of those campaign contributions. And that is where Judge Lally Green might be said to have made incomplete disclosures. Did she say anything at all about teaching? Your Honor, in the record, which is my affidavit, which was placed below and never challenged, my affidavit says clearly she did discuss the fact that she taught employment law class with people at PPG. And when did this occur in the arbitration procedure? In the same conversation where she said she knows people at PPG. Pre-hearing. Yeah, that's what I'm asking. And pre the time where if you wanted to, because we didn't even sign, and there's no signed record in the, there's no signed agreement in the record anyway, the arbitration was done in August. We were going to arbitrate. She said things after we agreed to arbitrate. Nothing was allegedly signed until October 31st. But if you look at the opening brief from Mr. Freeman, footnote two, and this is why the whole argument about nondisclosure is not well placed. The footnote two says, PPG disclosure was very important to me because I had been involved in heated litigation disputes with PPG. Indeed, I had even deposed the general counsel. And so she says, I know some people at PPG. The next question, if you actually care about it, and it's a red flag for you, is who do you know? Because one of the people, of course, is the general counsel who allegedly gave these, who did give the donations. So there was no follow-up. The natural follow-up to, I know some people at PPG, when you've litigated against them, as they've admitted in a binding fashion in their brief, is who do you know? So it's not as though they were misled that she said, I know some low-level people who work at a factory, or I go to church with somebody who's in human resources. She said, I know some people over there. Where's the next question? Why, when my client bargained for, in judges' chambers, on August 4th, 2011, to complete the arbitration in 2011, and if we lost, we promised in a court order to write a check on December 28th. That's why this was compressed. That's why the arbitrator selection process was sitting in chambers with Judge Schwab and saying, these three people are okay by me. Can we jump forward to the standard? Yes, you are. Because that is something that, as far as I know, this court has not spoken to. Would you agree that one thing we can derive from Commonwealth codings and from the concurrence of Justice White that Judge Barry referred to, that we can't apply the same standards of judicial decorum and propriety that apply to Article III judges here with respect to arbitrators? Your Honor, I don't believe that's what you can draw from it. The other cases have said you don't even want arbitrators. I mean, as a starting point, there was no majority, clearly, in Commonwealth codings to say that. So where does that leave us, then? What is the standard if it is not a standard of appearance of impropriety? Your Honor, I think there are two answers to that. The basic answer, which comes from, I think you say, Bapu case, which is the recent case, as well as the Andorra case, which I think Judge Barry wrote for the court, is that there's an objective standard that requires powerful evidence that a reasonable observer would think that there is bias, and it's a very heavy standard. And that standard applies regardless of the factual input into the analysis. So whether it's a question of disclosure or nondisclosure, you can look at the situation, and is there powerful evidence of actual bias? And the important point about bias is it has to relate to the results of the proceeding, and that's something that I think is lost in Mr. Freeman's argument. Mr. Freeman says, well, there was this interest from 2007, which was five years earlier. All the cases have either directly, because there's a family relationship or a business relationship, the sense that, and this is where the objective test comes in, someone looking from the outside in would say, if you rule in parties A favor, it'll benefit you in some way. So if it's your son, which is the Morelite case, my son will be happy with me because I ruled in favor of his company. Or the new Regency case, which they cite, where the arbitrator's company was making a film with one of the parties. You say, well, if I rule in their favor, we'll get to finish making the film. Here, because the campaign was five years old, and there's nothing in the record that says she's running again, this isn't even a case of a trivial nondisclosure. There's no evidence, not only objective or analysis, that could say that she would obtain a benefit from ruling in favor of PGW. It would be different if she was running again. Then you could say, there might be some punch to it to say, well, she could have argued an incurring favor for her next campaign run. There's no business relationship, there's no family relationship, there's no campaign. The campaign they're talking about was stale, where the PPG people, the other company, gave 5,000 out of 1.2 million. So what's in it for her? I mean, that's sort of the question, if you want to put it in a more colloquial way. How would she ever benefit? There's nothing. And that's the analysis. Is there powerful evidence that this arbitrator, regardless of what the evidence is, or whether it's disclosure or nondisclosure, which we say is the Third Circuit test, that she has a stake in the outcome. And here, the standard can't be met. There is no stake. What if they say her stake in the outcome is $8,000 in arbitrator's fees? That would be different than the bias test. That would be their fraud and inducement theory. And just briefly, the problem with that, Judge Barry, is Paul says, there's only a limited number of ways to make an arbitration award. The arbitrator making a misrep to the other side isn't one of them. They could have squeezed it into the misbehavior or the corruption language in the statute, but they didn't, and the bar for that's even higher than evident partiality. So it's not even available. You haven't talked at all about the waiver. We dissuaded you there, but do you want to say something about that? If I may, I see my time's up, but if I could have a minute. I think that ties back to the policy argument, why it's so important. This was, I think if the court looks at it, almost a perfect arbitration. It was agreed to with counsel, with the judge. It happened quickly. There's a reasoned opinion. And there are responsibilities on people going to arbitration to figure out what they want to do and investigate their arbitrators. And here, there was an initial decision made as reflected in the order just to go with these three arbitrators for whatever reason. And bypass the normal selection process. Whether it's because Judge Lally Green was sitting on the Western District's neutral panel or whatever mix of information you had. Then there was time before the hearing started where you could pick one of those three. There's no limitation. You could do whatever you wanted to do. You could say, I don't like Judge Maureen Lally Green because I looked on the internet and she wrote an opinion that I didn't like. Or whatever the reason was, and we'd already agreed if one doesn't work out, we go to number two. So the only entity in that room at the arbitration in Pittsburgh that can be charged with knowledge of the contributions on the record is the plaintiff's law firm. And so we have this situation where they're sitting there at the arbitration. My firm's from Chicago. PGW is a new company. And they've given money to her campaign, which in our view is immaterial because as Mr. Fox conceded, it's an ordinary course of judicial campaigns. It shouldn't be surprising. And now after we bargained for a rapid resolution, they had ample time to investigate. They had the opportunity in Judge Schwab's chambers to say, you know, I want these three, but I want a line in the order that says. Was any material relied upon unavailable before the arbitration occurred? In other words, the campaign contributions and all. Could that stuff have been found beforehand? Your Honor, the record is, it's my affidavit again, which says five minutes and I found it. It's on the Internet. It's a public record. Her campaign, which is also in the record, was big news in Pennsylvania because there was a very significant battle, political battle apparently. So there are newspaper articles. I mean, this was a well-known campaign. So to let all that time go by, and part of the bargain, that's why I brought up the payment issue, part of the bargain was if Mr. Freeman won, we were going to write a check. We weren't going to go running to the court. We weren't going to bond it up. We were going to pay the money and be done with it in 2011. So to come back now and we have all those opportunities. When you're represented by counsel, it's not a contract of adhesion. When you have the opportunity to bump to number two or number three, to come back now and say I should have gone on the Internet earlier, that is a waiver. It has to be. And that behavior has to be curtailed. So I see my time is up unless you have any questions. Thank you very much, Mr. Mayor. Mr. Fox, rebuttal. Thank you, Your Honor. Again, there is no authority that's been cited that places the burden upon counsel to do an investigation of an arbitrator. In this case, the arbitrator had been endorsed by Judge Schwab, a highly respected judge in the Western District. We knew her to be a former Pennsylvania Superior Court judge. We knew her to be a Supreme Court candidate. We believed, and I justifiably but wrongly relied upon her statements that she only knew people at PPG, which I think can only fairly be interpreted as an attempt to trivialize the actual nature of her relationships. How long have you practiced in Pittsburgh, Mr. Fox? For over 25 years, Your Honor. You, I assume, knew Judge Ali Green, who had also been a professor at Duquesne before she became judge? I did not know her, Your Honor, in advance of the arbitration proceeding. And as I indicated in my affidavit, there was no further disclosure regarding the nature of her relationship with PPG beyond the remarks that we're relying upon. I hotly contest the notion there was any mention of any relationship that she had with senior in-house employment counsel. And I specifically rebut that in my affidavit. So we have a factual dispute evidently in that area. But I'd urge you to look closely at Mr. Mayer's affidavit, because the allegations as to when she allegedly made the disclosure of her relationship with in-house counsel are very vague. It doesn't identify a specific point in time at which she said that. And I very clearly disaffirm the notion that that relationship was ever but, Your Honor, I did not have pre-existing familiarity with her beyond my knowledge that she had been a Superior Court judge and I had read some of her opinions. So the notion that counsel should have to undertake an exhaustive investigation of an arbitrator under these circumstances, where an esteemed former judge is the arbitrator that's endorsed by the district court, just not supported by the case law. And I haven't cited a single case that puts a burden upon me that should relieve her of her fundamental disclosure obligations. The issue of jurisdiction was addressed. Again, Your Honor, we fully briefed that. Green tree does not mention or imply that a district court would be deprived of original jurisdiction simply because it decided to refer a case to arbitration and administratively close the case. And the Third Circuit settled the issue in Penn-West Associates in which it defined the effect of administrative closure. It has no effect other than to remove a case from the court's active docket. So the court clearly has jurisdiction to decide this appeal. Are there any further questions? No. Thank you very much, Mr. Fox. Thank you, Your Honor. Thank you, counsel. The case was well argued and we will take it under advisement.